UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CLARA ANN JACKSON, | : | Case No. 3:12-cv-00924 (MPS) |
| MARK WILSON, | : | |
| SHARNTAE WILSON, | : | |
| ASHLEY ALRIDGE, | : | |
| CLARA ANN JACKSON, | : | |
| as next best friend of Janae Alridge, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| TOWN OF BLOOMFIELD, | : | |
| BETSY J. HARD, Police Chief | : | |
| JEFFREY L. BLATTER, Police Chief | : | |
| MICHAEL DRISCOLL, Police Sgt. | : | |
| JOHN FOX, Police Officer | : | |
| JAMES SALVATORE, Police Officer | : | |
| BRIAN GRANT, Police Officer | : | |
| BRUCE KAZ, State Marshal | : | |
| Defendants. | : | March 18, 2015 |

_____

**RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

**I.     Introduction**

The plaintiffs in this case, Clara Ann Jackson, Mark Wilson, Sharntae Wilson, Ashley

Alridge, and Janae Alridge, are members of an extended family that includes nonparty Kevin

Jackson. They allege that Connecticut State Marshal Bruce Kaz violated their constitutional

rights and committed common law torts by harassing them after attempting to serve capias

warrants on Kevin Jackson. The remaining defendants (collectively, the "Bloomfield

Defendants") are sued under similar claims arising from the Town of Bloomfield Police

Department's response to the incident involving Bruce Kaz, including direct intervention by

police officers at the scene.

Bruce Kaz and the Bloomfield Defendants have separately filed motions for summary judgment, both of which the Court addresses in this ruling. As detailed herein, the Court will grant in part and deny in part both motions. The claims in the complaint are too numerous to summarize here; the Court will address each count in the complaint under a separate heading.

## II.   Legal Standard for Summary Judgment

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

An issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 97 (2d Cir. 2000). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (internal quotation marks and citation omitted). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment. Any weighing of the evidence is the prerogative of the finder of fact, not an exercise for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) (citations omitted).

### III.    <u>Facts</u>

The following facts are undisputed:

Bruce Kaz ("Marshal Kaz") is a Connecticut State Marshal, i.e., a person who, under Connecticut law, has "authority to provide legal execution and service of process . . . as an independent contractor compensated on a fee for service basis." Conn. Gen. Stat. § 6-38a(a). Some time after 9:00 p.m. on May 29, 2010, Marshal Kaz arrived at a residence at 26 Forest Lane, Bloomfield, Connecticut to execute capias warrants on Kevin Jackson ("Mr. Jackson"). The address listed on the capias was 17 Wakefield Circle, East Hartford, but Marshal Kaz knew that Mr. Jackson's wife Clara Ann Jackson ("Ms. Jackson") owned 26 Forest Lane, and Marshal Kaz had been told by a third party that Mr. Jackson was living there as well. Accompanying Marshal Kaz was Kurt Murphy ("Mr. Murphy"), a friend of Marshal Kaz who was not a marshal but sometimes rode along with Marshal Kaz when he was on duty. Inside the residence at that time, Ms. Jackson was hosting her brother Mark Wilson ("Mr. Wilson") and his wife Sharntae Wilson ("Ms. Wilson") to celebrate the Wilsons' wedding anniversary. Ms. Jackson's daughters, Ashley Alridge and Janae Alridge, were also inside the residence.

As Marshal Kaz approached the residence, the front door was open, permitting him to see through the clear-glass storm door and into the kitchen area of the residence. Marshal Kaz knocked on the storm door. Ms. Jackson came to the door and spoke to Marshal Kaz through the storm door. Marshal Kaz told Ms. Jackson that he wanted to speak with a man whom he could see seated in the kitchen. Mr. Wilson then appeared at the door and presented his identification to Marshal Kaz. Ms. Jackson and Mr. Wilson were able infer that Marshal Kaz was a law enforcement officer because Marshal Kaz was wearing a marshal badge around his neck and "duty belt" with a firearm.

They told Marshal Kaz that the person he was looking for was not at the residence, but Marshal Kaz did not believe them. Marshal Kaz ran around to the back of the residence, suspecting that Mr. Jackson might leave to avoid service of the capias warrants, but he did not see anyone exit the residence. He then returned to the front of the residence, finding that the front door had been closed. He went to his car, which was parked a few houses down the street, and telephoned the Town of Bloomfield Police Department ("Bloomfield PD"). Marshal Kaz told the police dispatcher that he was attempting to serve a capias warrant on Mr. Jackson and needed assistance. He then instructed Mr. Murphy to stand to the side of the residence to monitor the rear exits.

Marshal Kaz again approached the front door of the residence. Ms. Jackson opened a window facing the street and asked Marshal Kaz what he wanted. She reiterated that the person that Marshal Kaz was looking for was not at the residence, and asked him what he wanted. Marshal Kaz continued to stand on the front steps of the residence. Shortly after this conversation, the front door opened, and Ms. Jackson, her two daughters, and Mr. and Ms. Wilson all exited the residence. As the group walked toward their parked cars, Marshal Kaz moved out in front of them, walking backwards and facing them. The group got into the Wilsons' car, and Mr. Wilson started the engine. Ms. Wilson was in the front passenger seat, and Ms. Jackson and her daughters sat in the back.

Just as Mr. Wilson began to drive the car forward, Marshal Kaz positioned himself in front of the car, blocking it from moving further. As he did so, two Bloomfield PD cruisers arrived. Two Bloomfield PD officers, John Fox ("Officer Fox") and James Salvatore ("Officer Salvatore"), approached the car and ordered Mr. Wilson to turn off the engine and step out of the car. Mr. Wilson initially did not get out, but then stepped out of the car after one of the officers

4

threatened to use mace spray if he did not exit. Both officers then forced Mr. Wilson to the ground and handcuffed him. In doing so, one officer kicked Mr. Wilson's legs and pushed him down, and both officers held Mr. Wilson's arms and used their knees to apply pressure to his body. Ms. Wilson then got out of the car and called out to the officers. Marshal Kaz grabbed Ms. Wilson from behind, forced her to the ground, and held her there. While on her knees, Ms. Wilson reached back and grabbed Marshal Kaz's testicles, at which point he said, "She's got my balls!" Officers Fox and Salvatore left Mr. Wilson, who was already handcuffed, and went over to Ms. Wilson to handcuff her.

There was no further physical contact between the officers and the Wilsons after they had been handcuffed. Bloomfield PD officer Brian Grant ("Officer Grant") and Sergeant Michael Driscoll ("Sgt. Driscoll") arrived at the scene after the Wilsons had been handcuffed. Ms. Jackson and her daughters had remained in the car during the physical encounter between the Wilsons and the police officers. Ms. Jackson observed the encounter, was upset by what she saw, and had trouble sleeping after the incident, but did not seek professional counseling. One of her daughters, Ashley Alridge, was unable to see what happened after the Wilsons were forced to the ground. She was upset by the incident and had trouble sleeping but did not seek professional counseling. Ms. Jackson's other daughter, Janae Alridge, also was unable to see what happened after the Wilsons were forced to the ground. She was upset by the incident but did not seek professional counseling.

The following facts are disputed:

The parties dispute the justification for Marshal Kaz's presence at the residence. Marshal Kaz claims that Mr. Jackson was a resident of 26 Forest Lane and that he saw Mr. Jackson there on the night of the incident. But the plaintiffs testified that Mr. Jackson was not at the residence

that night. Mr. Wilson Dep. at 35; Janae Alridge Dep. at 9. The plaintiffs say that Ms. Jackson

and Mr. Jackson had separated, and Mr. Jackson had moved out approximately three weeks prior

to May 29, 2010, and was living with his mother. Mr. Wilson Dep. at 218; Ms. Jackson Dep. at

53, 61-62; Janae Alridge Dep. at 31-32; Ashley Alridge Dep. at 37. Marshal Kaz claims that on

May 29, 2010, there was a car parked in front of the residence that he believed to be used by Mr.

Jackson, whereas Ms. Jackson testified that it was her car, and Mr. Jackson had not used it since

moving out. Ms. Jackson Dep. at 64-65.

The parties dispute what the plaintiffs knew about Marshal Kaz's purpose for visiting the

residence. Marshal Kaz claims that he identified himself and that Ms. Jackson knew that Mr.

Jackson was being sought for service of capias warrants. Ms. Jackson testified that she knew

only that Mr. Jackson owed child support arising from a prior relationship, but did not know

about the capias warrants. Ms. Jackson Dep. at 44-45, 66. The plaintiffs testified that Marshal

Kaz did not announce his purpose for visiting the residence, and they only found out about the

capias warrants after the incident, while overhearing Marshal Kaz talk to Sgt. Driscoll. Mr.

Wilson Dep. at 217-18; Ms. Wilson Dep. at 170; Ms. Jackson Dep. at 57. The plaintiffs also

testified that Marshal Kaz was very vague in his requests and never asked for Mr. Jackson by

name, first asking to speak to "him" (pointing to the kitchen) and then asking to speak to "the

other man" once Mr. Wilson had come to the door. Ms. Jackson Dep. at 22; Ms. Wilson Dep. at

24-26; Mr. Wilson Dep. at 37. According to the plaintiffs, Ms. Jackson and Mr. Wilson then told

Marshal Kaz that there was no other man at home. Ms. Wilson Dep. at 27; Marshal Kaz Dep. at

100, 263.

The parties dispute what happened as the plaintiffs were leaving the residence. Marshal

Kaz claims that he merely walked backwards in front of the group, instructing them to stay to

speak with Bloomfield PD officers who were on their way, but did not try to detain them. He says that the plaintiffs physically assaulted him, and he only touched them in order to defend himself. Marshal Kaz Aff. ¶ 17. But the plaintiffs have testified that Marshal Kaz told them that they were under arrest and could not leave, and attempted to block them from leaving—first by blocking the front door, then by blocking the path to their cars, and finally by throwing himself in front of the Wilsons' car. Ms. Wilson Dep. at 36-38; Ms. Jackson Dep. at 31-33; Mr. Wilson Dep. at 61-71; Janae Alridge Dep. at 12, 16; Ashley Alridge Dep. at 18-22. They further testified that Marshal Kaz was the one to initiate physical contact when he grabbed and held Ms. Jackson's wrist and her daughter Janae Alridge's wrist, grabbing Ms. Jackson's wrist tightly enough to bend her bracelet and send it flying off her wrist. Ms. Jackson Dep. at 31-33; Ms. Wilson Dep. at 42; Mr. Wilson Dep. at 75-76; Janae Alridge Dep. at 12, 16; Ashley Alridge Dep. at 18-22. Ms. Jackson's wrist caused her pain for a couple of weeks, and she sought treatment in the form of a single visit to a doctor who instructed her to apply ice and take over-the-counter anti-inflammatory drugs. Ms. Jackson Dep. at 79.

The parties dispute the nature of the encounter between Mr. Wilson and the Bloomfield PD. Although both sides agree that the officers ordered Mr. Wilson to leave the car more than once—the first demand made with the car window being closed and a later demand accompanied by a threat to use mace spray—the remaining details differ between their accounts. The defendants characterize Mr. Wilson as noncompliant, even testifying that Mr. Wilson "swat[ted] at the police officers." Marshal Kaz Dep. at 197; *see also* Officer Fox Dep. at 51-52. They claim that Mr. Wilson was noncompliant enough that they had to assume an active role in extracting him from the car, by opening the door and removing the keys from the ignition themselves, and then had to force him to the ground because he refused to sit.

But according to the plaintiffs, Mr. Wilson was startled when the police officers initially banged on the car window and made their first demand. Mr. Wilson then rolled down the window and asked the officers, "Do you know why you're here?" The officers made no attempt to speak to him about what was happening before ordering him out of the car a second time and threatening to use mace spray. Mr. Wilson Dep. at 92-96; Ms. Jackson Dep. at 37-38; Ms. Wilson Dep. at 52-54. At that point, Mr. Wilson promptly cooperated and exited the car on his own, with his hands up. But the officers nonetheless quickly forced him to the ground by kicking his legs and pulling his arms behind him. Mr. Wilson Dep. at 94; Ms. Jackson Dep. at 37-38, 100-101; Ms. Wilson Dep. at 54-56; Ashley Alridge Dep. at 26; Janae Alridge Dep. at 22. According to the plaintiffs, the officers then continued to push Mr. Wilson into the ground and force their knees into his back for at least thirty seconds, even though Mr. Wilson was not resisting and was calling out in pain and telling the officers that he had a bad back. Mr. Wilson Dep. at 107-08; Ms. Jackson Dep. at 104-05; Ms. Wilson Dep. at 57, 62.

The parties dispute the nature of the encounter between Ms. Wilson and the Bloomfield PD. The defendants claim that Ms. Wilson interfered with the officers as they were dealing with Mr. Wilson, grabbing at them and standing closely enough that she could have reached for the officers' guns. The plaintiffs dispute those claims. They allege that Ms. Wilson never even approached Officers Fox and Salvatore before Marshal Kaz grabbed her arms from behind and kicked her feet from under her, forcing her to her knees; they say instead that she stood ten to fifteen feet away from Officers Fox and Salvatore and shouted at them to stop because Mr. Wilson had a bad back. Ms. Jackson Dep. at 112-13, 137; Mr. Wilson Dep. at 109; Ms. Wilson Dep. at 62, 99, 165. They also claim that when Officers Fox and Salvatore came over to where Ms. Wilson and Marshal Kaz were, they did not "subdue" Ms. Wilson, but instead kicked her,

jumped on her back, twisted her arms, pushed her face into the ground, and forced their knees into her back before handcuffing her, even though she was not resisting. Ms. Wilson Dep. at 65-66; Mr. Wilson Dep. at 110, 120.

The parties dispute what happened after the incident. Both Mr. and Ms. Wilson testified that when Sgt. Driscoll arrived at the scene, he told Marshal Kaz that Marshal Kaz was wrong to detain them. Mr. Wilson Dep. at 121; Ms. Wilson Dep. at 102. Sgt. Driscoll then told the Wilsons that they had been handcuffed because they touched an officer and that they could make a statement if they wanted. Mr. Wilson Dep. at 121; Ms. Wilson Dep. at 104. The Wilsons were then permitted to get into their own car and drive to meet the officers at the police station, where Sgt. Driscoll then told them that Officer Fox, as the arresting officer, would take their statements, and they would have to come back during business hours if they wanted to file a formal complaint. Mr. Wilson Dep. at 122, 140-41; Ms. Wilson Dep. at 108. The Wilsons then visited the police station a few days later to lodge a complaint about the incident and spoke with Jeffrey Blatter ("Mr. Blatter"), who presented himself as Acting Chief of the Bloomfield PD. Mr. Wilson Dep. at 160-63; Ms. Wilson Dep. at 110-11. During the conversation, Mr. Blatter did not apologize, attempted to justify the officers' actions as "following the lead of the marshal," and said that "they were looking into if there was something that they could have done different." Mr. Wilson Dep. at 161-63.

Weeks later, the police obtained a warrant to arrest the Wilsons on charges filed in connection with the incident, but no arrest took place because they turned themselves in and were booked and released on bond. Ms. Wilson Dep. at 115; Mr. Wilson Arrest Warrant and Information (dated June 11, 2010), Exh. 11 to Pl.'s Opp. (ECF No. 93-13); Ms. Wilson Arrest Warrant and Information (dated June 10, 2010), Exh. 12 to Pl.'s Opp. (ECF No. 93-14). Sgt.

Driscoll supervised Officer Fox's preparation of the arrest warrant application. Sgt. Driscoll Dep. at 27. The charges were later dropped. Ms. Wilson Dep. at 115.

The parties agree that Betsy Hard ("Ms. Hard") was previously the Chief of Police of the Town of Bloomfield but was not Chief at the time of the incident. But the parties dispute Mr. Blatter's status at the time of the incident. The defendants claim that Mr. Blatter was not the Chief of Police of the Town of Bloomfield, whereas the plaintiffs claim that Mr. Blatter had assumed duties of the Chief and was presenting himself as Acting Chief at the time of the incident, as the permanent position of Chief was vacant at that point. The plaintiffs also cite a document—a Bloomfield PD "Employee Performance Self-Evaluation"—that contains Mr. Blatter's name and describes his duties between July 1, 2009, and June 30, 2010, which included "assum[ing] command of the department in the absence of the Chief of Police." Exh. 3 to Pl.'s Opp.

## IV.   Discussion of the Bloomfield Defendants' Motion

### A.   Liability of Ms. Hard, Mr. Blatter, Sgt. Driscoll, and Officer Grant in Their Individual Capacities[1]

In several counts in the complaint (Counts 1-12), the plaintiffs bring claims against "Bloomfield Police Officers," without specifying which defendants are included under that label. Although the principal allegations arise from the direct actions of only two officers—Officers Fox and Salvatore—a broader reading of the term "Bloomfield Police Officers" would also include Ms. Hard, Mr. Blatter, Sgt. Driscoll, and Officer Grant. In most instances, however, the

---

[1]        The complaint also names the Bloomfield Defendants in their official capacities. The Court will consider these claims under Count 14 in the context of the *Monell* claim against the Town of Bloomfield. *See Seri v. Town of Newtown*, 573 F. Supp. 2d 661, 671 (D. Conn. 2008) ("Section 1983 claims against municipal employees sued in their official capacity are treated as claims against the municipality itself. Therefore, in order to assert a viable claim against a municipal employee in his official capacity, the plaintiff must have a viable *Monell* claim against the municipality.") (citations omitted).

claims against those latter defendants must be dismissed because they were not sufficiently involved in the alleged misconduct. Thus, before separately considering all the counts in the complaint, the Court will address the overarching issue of Ms. Hard's, Mr. Blatter's, Sgt. Driscoll's, and Officer Grant's liability.

The defendants argue that the plaintiffs have not demonstrated that Ms. Hard, Mr. Blatter, Sgt. Driscoll, and Officer Grant were personally involved in any of the alleged misconduct. The plaintiffs do not oppose the motion as to Officer Grant[2] and have presented no evidence that would sustain claims against him individually; summary judgment is therefore GRANTED as to all claims against Officer Grant.

As to Ms. Hard's, Mr. Blatter's, and Sgt. Discroll's liability for the constitutional torts (Counts 1-8), such liability may arise from their personal involvement as supervisors even if they did not directly commit the torts. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). But "a supervisor cannot be held liable under a theory of *respondeat superior* for the constitutional torts of his subordinates; he must be personally involved in a constitutional violation in order to generate liability under § 1983." *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

> Prior to *Iqbal,* we held that: "The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring."

---

[2] The plaintiffs represent in their opposition brief that they "will withdraw their cause of action as to Defendant Bloomfield Police Officer Brian Grant." Pl.'s Opp. at 26.

*Id.* (quoting *Colon*, 58 F.3d at 873). The Second Circuit has so far declined to clarify the contours of supervisory liability after *Iqbal*. *Id.* at 117. This Court has generally continued to apply *Colon*, though it is unclear whether *Iqbal* overrules or limits *Colon*. *See Boyd v. Arnone*, No. 3:11CV824 AWT, 2014 WL 4851885, at *5 (D. Conn. Sept. 30, 2014); *Friedland v. Otero*, No. 3:11CV606 JBA, 2014 WL 1247992, at *10 (D. Conn. Mar. 25, 2014). *Colon* must, however, be applied in a manner consistent with *Iqbal*'s requirement that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 556 U.S. at 676.

On the basis of the record construed in the light most favorable to the plaintiffs, the Court finds evidence of personal involvement on the part of Sgt. Driscoll in the alleged malicious prosecution of the Wilsons, but not the false arrest or use of unreasonable force. The Court finds no evidence of personal involvement on the part of Ms. Hard or Mr. Blatter in any of the alleged constitutional torts.

The plaintiffs have brought forth no evidence linking Ms. Hard to the alleged constitutional violations under any of the theories recognized by *Colon*. The plaintiffs concede that Ms. Hard was no longer Chief of the Bloomfield PD in May 2010, and the only evidence bearing on this issue is an affidavit from Bloomfield's Director of Human Resources, submitted by the defendants, attesting that Ms. Hard retired from her position effective November 5, 2009, more than six months before the incident at Ms. Jackson's residence. Cindy Coville Aff. ¶ 6. The plaintiffs cannot rest their claim against Ms. Hard on nothing more than the bare accusation that she "was responsible for implementing and enforcing policies regarding the use of force and investigations," Pl.'s Opp. at 25, without identifying specific policies implemented by Ms. Hard and their relationship to the alleged constitutional violations. *See, e.g.*, *Austin v. Pappas*, No.

04CV7263 (KMK)(LMS), 2008 WL 857528, at *4 (S.D.N.Y. Mar. 31, 2008) (granting summary judgment to defendants where there was "no evidence in the record to support a theory that Defendant Cola created a policy or custom that fostered and led to the alleged violation of Plaintiff's rights"); *Porter v. City of New York*, No. 1:03CV6463-ENV-LB, 2007 WL 1791149, at *8 (E.D.N.Y. June 19, 2007) ("A plaintiff cannot stave off summary judgment merely by offering conclusory allegations that such high-ranking officials failed to train, supervise, or discipline employees . . . .").

Because the plaintiffs have failed to demonstrate a genuine dispute as to Ms. Hard's personal involvement, the Court GRANTS summary judgment as to the federal constitutional claims against Ms. Hard in her individual capacity, as well as the analogous claims under Sections 7 and 9 of the Connecticut Constitution. *See Morales v. Town of Glastonbury*, No. 3:09-CV-713 JCH, 2012 WL 124582, at *7-8 (D. Conn. Jan. 17, 2012) (applying the same analysis of a defendant's personal involvement to federal Section 1983 claims and analogous state constitutional claims); *Carey v. Maloney*, 480 F. Supp. 2d 548, 561 (D. Conn. 2007) (same).

The plaintiffs have also failed to demonstrate a genuine dispute as to Mr. Blatter's personal involvement in the false arrest of, and use of unreasonable force against, Mr. and Ms. Wilson. Those constitutional violations are alleged to have occurred on May 29, 2010, during the incident at Ms. Jackson's residence, when Officers Fox and Salvatore "subdued" the Wilsons and handcuffed them. There is no allegation in the complaint, much less any evidence, of later false arrests[3] or uses of unreasonable force. The only evidence relating to Mr. Blatter's involvement—that the Wilsons met with him a few days *after* the May 29 incident to file a

---

[3]    "In analyzing claims alleging the constitutional tort of false arrest, we have generally looked to the law of the state in which the arrest occurred." *Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007) (quotation marks omitted). "Under Connecticut law, [f]alse imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." *Id.* at 204 (same).

complaint—therefore fails to establish personal liability. *See Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009) ("Receiving post hoc notice does not constitute personal involvement . . . . [A] supervisor may be liable for her failure to remedy a violation only in those circumstances where the violation is ongoing and the defendant has an opportunity to stop the violation after being informed of it."); *Platt v. Inc. Vill. of Southampton*, 391 F. App'x 62, 65 (2d Cir. 2010) ("We cannot say, however, that an allegation that a supervisory official ignored a letter protesting past unconstitutional conduct is, without more, sufficient to state a claim that the official was 'personally involved' in the unconstitutional conduct.").

As to Mr. Blatter's involvement in the malicious prosecution initiated by the filing of criminal charges and arrest warrants for the Wilsons, the plaintiffs have produced no evidence that Mr. Blatter played a role in initiating or approving those charges.[4] If he was in fact Acting Chief at the time, Mr. Blatter may well have had the power to involve himself in the decision whether to prosecute, but there is no evidence that he did or that he was even aware of the charges. The fact that the plaintiffs met with Mr. Blatter and lodged a complaint about the May 29, 2010, incident sheds no light on what Mr. Blatter did subsequently. A fact-finder may not infer that Mr. Blatter was personally involved and hold him liable for the prosecution merely because he occupied a high rank within the Bloomfield PD; doing so would be an impermissible

---

[4]       "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment and establish the elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (citations omitted). "To establish the tort of malicious prosecution, a plaintiff must prove: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *Karwowski v. Fardy*, 984 A.2d 776, 781-82 (Conn. App. 2009) (quotation marks omitted).

application of respondeat superior. The Court therefore GRANTS summary judgment as to the constitutional tort claims against Mr. Blatter.

As to Sgt. Driscoll, there is no dispute that he arrived at the scene after the physical altercation had ended, giving him no opportunity to prevent the alleged false arrest or use of unreasonable force. But Sgt. Driscoll himself admitted in his deposition that he supervised Officer Fox's preparation of the arrest warrants for the Wilsons and that, in that role, he would ordinarily review the affidavit and could modify it prior to its being submitted if he felt that it was prudent to do so. Sgt. Driscoll Dep. at 27, 76. There is also evidence that Sgt. Driscoll was aware that the Wilsons were uncomfortable with and resistant to giving their statements to Officer Fox because it was he who allegedly assaulted them. Pl's L.R. 56(a) Statement ¶ 42. A reasonable jury could thus infer that Sgt. Driscoll was aware of information that required him to do more than simply accept Officer Fox's version of events and proofread the affidavit. In short, there is enough evidence in the record to raise a genuine dispute as to his personal involvement in the prosecution of the Wilsons. The Court therefore DENIES summary judgment as to the claims of malicious prosecution against Sgt. Driscoll in his individual capacity but GRANTS summary judgment as to the claims for false arrest and the use of unreasonable force.

The claims against the "Bloomfield Police Officers" under the common law of Connecticut (Counts 9-12) are evaluated under a similar standard. "The settled rule appears to be that public officials are exempt from liability to answer for the unlawful acts of their subordinates, unless there is a statute creating such liability" or unless the official "personally directed or authorized" the acts. *Leger v. Kelley*, 110 A.2d 635, 639 (Conn. Super. Ct. 1954), *aff'd*, 116 A.2d 429 (Conn. 1955) (citing *Reiter v. Illinois Nat. Cas. Co.*, 73 N.E.2d 412, 417-18 (Ill. 1947) (collecting cases from several jurisdictions)); *see also* Restatement (Second) of

Agency § 358 (1958) ("The doctrine of respondeat superior does not apply to create liability against an agent for the conduct of servants and other agents of the principal appointed by him, even though other agents are subject to his orders in the execution of the principal's affairs. He is, however, subject to liability . . . if he directs or permits tortious conduct by them or fails properly to exercise control over them."); *accord* Restatement (Third) Of Agency § 7.01 cmt. d (2006).

The record contains no evidence that Ms. Hard, Mr. Blatter, or Sgt. Driscoll directed or authorized Officers Fox and Salvatore to assault and batter the plaintiffs (Count 12), inflict emotional distress upon the plaintiffs (Counts 10-11), or engage in any other negligent, reckless or willful misconduct (Count 9). Nor is there any evidence that those defendants knew or reasonably should have known that Officer Fox or Officer Salvatore had a propensity to engage in such misconduct or that such misconduct was otherwise foreseeable. Summary judgment is therefore GRANTED on Counts 9-12 as to Ms. Hard, Mr. Blatter, and Sgt. Driscoll.

> **B.      Count 1: Mr. Wilson against Sgt. Driscoll (Malicious Prosecution) and Officers Fox and Salvatore (False Arrest and Malicious Prosecution) for Violation of the Fourth Amendment[5]**

> **i.       False Arrest on May 29, 2010**

The defendants argue that Mr. Wilson's claim for false arrest fails as a matter of law because there was probable cause—or at least arguable probable cause—to arrest him during the incident at Ms. Jackson's residence on May 29, 2010. The Court disagrees and therefore denies summary judgment on the claim.

"Under Connecticut law, [f]alse imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." *Russo v. City of Bridgeport*, 479 F.3d 196, 204 (2d

---

[5]      Count 1, along with Counts 3, 5, 7, 18, and 20, originally also included claims under the Eighth and Fourteenth Amendments, which the Court dismissed in an oral ruling on a motion for judgment on the pleadings. ECF No. 51.

Cir. 2007) (quotation marks omitted). "And, in Connecticut, a false arrest claim cannot lie when the challenged arrest was supported by probable cause." *Id.* at 203. "[P]robable cause to arrest exists when police officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Zalaski v. City of Hartford*, 723 F.3d 382, 389-90 (2d Cir. 2013) (quotation marks omitted). "[P]robable cause depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest, and . . . the probable cause inquiry is objective rather than subjective." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) (same).

Moreover, because the defendants have asserted a defense of qualified immunity, Mr. Wilson must be able to prove that the existence of probable cause is not even "arguable." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) ("Even if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest."). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (quotation marks omitted).

The defendants claim that there was arguable probable cause to arrest Mr. Wilson for violating Conn. Gen. Stat. § 53a-167a, which prohibits "interfering with an officer" by "obstruct[ing], resist[ing], hinder[ing] or endanger[ing] any peace officer . . . in the performance of such peace officer's . . . duties." A violation of Section 53a-167a requires "specific intent to interfere with an officer." *State v. Colon*, 978 A.2d 99, 103 (Conn. App. 2009). "Connecticut precedent hold[s] that merely questioning police authority or even protesting police actions does

not constitute proscribed interference with an officer." *Berg v. Sorbo*, No. 14-1208-CV, 2015 WL 895383, at *2 (2d Cir. Mar. 4, 2015) (citing *State v. Williams*, 534 A.2d 230, 238 (Conn. 1987)).

The defendants characterize Mr. Wilson as highly uncooperative when asked to exit his car, but according to the plaintiffs' depositions, Mr. Wilson was cooperative and did not resist Officers Fox's and Salvatore's orders. Under the plaintiffs' version of events, the only circumstance approaching "resistance" or "interference" was the slight delay in responding to the first order to exit, which is easily attributable to the time that Mr. Wilson took to roll down the window and ask the officers if they knew why they were there, which cannot constitute interference under Section 53a-167a, especially when construed in the light most favorable to the plaintiffs. *See Berg*, 2015 WL 895383, at *2; *Williams*, 534 A.2d at 238.

If the plaintiffs' version is assumed to be true and construed in the light most favorable to them, there would not have been arguable probable cause to arrest Mr. Wilson—that is, it was objectively unreasonable to believe that there was probable cause, and officers of reasonable competence could not disagree on whether the probable cause test was met. There is therefore a genuine factual dispute on this issue, and summary judgment must be DENIED as to Mr. Wilson's claim for false arrest under Count 1.

### ii. Malicious Prosecution

The defendants argue that Mr. Wilson's claim for malicious prosecution fails as a matter of law because (1) the June 2010 warrant issued by the Superior Court creates a presumption of probable cause to prosecute Mr. Wilson, and (2) even if the presumption were rebutted by evidence of misrepresentations in the affidavit supporting the warrant, a "corrected affidavit"

would still establish probable cause—or at least arguable probable cause. The Court disagrees and therefore denies summary judgment on this claim.

"To establish the tort of malicious prosecution, a plaintiff must prove: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *Karwowski v. Fardy*, 984 A.2d 776, 781-82 (Conn. App. 2009) (quotation marks omitted). "Malice may be inferred from lack of probable cause." *Vandersluis v. Weil*, 407 A.2d 982, 985 (Conn. 1978).

Where, as here, a magistrate has issued a warrant finding probable cause to initiate the prosecution, the required showing changes. "[A] plaintiff who argues that a warrant was issued on less than probable cause . . . must make a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the allegedly false statement was necessary to the finding of probable cause." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (quotation marks omitted). "[R]ecklessness may be inferred where the omitted information was critical to the probable cause determination." *Id.* at 871. "To determine whether errors in an affidavit were necessary to the probable cause finding, we rely upon the corrected affidavit doctrine, under which errors in the affidavit are not material if, after crossing out any allegedly false information and supplying any omitted facts, the corrected affidavit would have supported a finding of probable cause." *Pines v. Bailey*, 563 F. App'x 814, 817 (2d Cir. 2014) (quotation marks omitted).

The warrant and information charging Mr. Wilson with violating Conn. Gen. Stat. § 53a-167a ("interfering with an officer") were based on Officer Fox's affidavit. In it, Officer Fox claims that Mr. Wilson "leaned back into his seat and said he is not getting out" when asked to exit his car. Exh. 11 to Pl.'s Opp. at 5. He says that Mr. Wilson "continued to yell and leaned back into his seat" when again instructed to exit. *Id.* at 6. He says that Mr. Wilson "was extremely irate" and "kept yelling and his fists were clenched and he stepped forward toward Officer Salvatore," ignoring a command to sit down on the curb. *Id.* But the plaintiffs have introduced evidence contradicting all of those assertions, and instead showing that Mr. Wilson took a brief moment to ask the officers if they knew why they were there and then exited the car voluntarily with his hands raised.

If the truth of the plaintiffs' version is assumed, then there are critical differences between that version and what appears in the affidavit, which permits an inference of recklessness in Officer Fox's preparation of the affidavit. The Court therefore considers the corrected affidavit and finds that it "would not support a reasonable officer's belief that probable cause existed," *Escalera*, 361 F.3d at 744—that is, would not provide arguable probable cause to prosecute Mr. Wilson—for the same reasons that there was not arguable probable cause to arrest Mr. Wilson under the plaintiffs' version of events, *see supra* Subsection IV.B.i. There is therefore a genuine factual dispute on this issue, and summary judgment must be DENIED as to Mr. Wilson's claim for malicious prosecution under Count 1.

C.   **Count 2: Mr. Wilson against Sgt. Driscoll (Malicious Prosecution) and Officers Fox and Salvatore (False Arrest and Malicious Prosecution) for Violation of Article I, Sections 7 and 9 of the Connecticut Constitution[6]**

The defendants argue that Count 2 fails to state a claim upon which relief may be granted because Connecticut does not recognize a constitutional tort under Article I, Sections 7 and 9 of the Connecticut Constitution in cases such as this because the allegations are not sufficiently "egregious." The Court considered and rejected this argument when it was presented in the motion for judgment on the pleadings, finding that the allegations were sufficiently egregious to give rise to a constitutional tort under the cause of action recognized in *Binette v. Sabo*, 710 A.2d 688, 692 (Conn. 1998) and limited to cases of "egregious misconduct" by *Martin v. Brady*, 780 A.2d 961, 966 (Conn. App. 2001).

Based on the record pertaining to what Mr. Wilson was allegedly subjected to by the Bloomfield PD officers, there is evidence to support the original allegations in the complaint, which this Court has already found to be sufficiently egregious to give rise to a cause of action under *Binette*. Applying the same standards to Count 2 as were applied to Count 1[7]—except for the doctrine of qualified immunity[8]—the Court finds a genuine factual dispute as to whether there was probable cause to arrest and prosecute Mr. Wilson and therefore DENIES summary judgment as to Count 2.

---

[6]    Count 2, along with Counts 4, 6, and 8, originally also included claims under Article I, Section 8 of the Connecticut Constitution, which the Court dismissed in an oral ruling on a motion for judgment on the pleadings. ECF No. 51.

[7]    *See State v. Kelly*, 95 A.3d 1081, 1091 (Conn. 2014) ("[T]he standards governing our analysis for purposes of article first, § 7, mirror those set forth by the United States Supreme Court . . . with regard to [federal] fourth amendment analysis . . . Because reasonableness is the touchstone of both the fourth amendment and article first, § 7, persuasive federal precedent applying that standard is particularly relevant to our state constitutional inquiry.") (quotation marks and citation omitted); *State v. Jenkins*, 3 A.3d 806, 839 n.39 (Conn. 2010) ("[I]n the search and seizure context, article first, § 9, is our criminal due process provision that does not provide protections greater than those afforded by either the fourth amendment or its coordinate specific state constitutional provision, article first, § 7.").

[8]    "[T]here is no Connecticut precedent establishing the same qualified immunity defense available under § 1983 for Connecticut constitutional violations." *Gilliam v. Town of Windsor Locks*, No. 3:03CV1201 AVC, 2006 WL 581208, at *7 (D. Conn. Mar. 7, 2006).

### D.   Count 3: Ms. Wilson against Sgt. Driscoll (Malicious Prosecution), and Officers Fox and Salvatore (False Arrest and Malicious Prosecution) for Violation of the Fourth Amendment

The defendants argue that Ms. Wilson's claims for false arrest and malicious prosecution fail as a matter of law for the same reason as Mr. Wilson's claims: the existence of arguable probable cause. The defendants claim that probable cause existed to arrest Ms. Wilson for violating Conn. Gen. Stat. § 53a-167a ("interfering with an officer," *see supra* Section IV.B) and Conn. Gen. Stat. § 53a-61 (third-degree assault) and later prosecute her for those crimes. No party disputes that Officers Fox and Salvatore witnessed Marshal Kaz yell out in pain, "She's got my balls," as he was holding Ms. Wilson down and that she made physical contact with him. Even construing the record in the light most favorable to the plaintiffs—and, in the case of the malicious prosecution claim, correcting the supporting affidavit to reflect the plaintiffs' version of events—there was arguable probable cause to believe that Ms. Wilson had committed an assault, in that officers of reasonable competence could disagree as to whether probable cause existed. *Escalera*, 361 F.3d at 743. Summary judgment is therefore GRANTED as to Count 3.

### E.   Count 4: Ms. Wilson against Sgt. Driscoll (Malicious Prosecution) and Officers Fox and Salvatore (False Arrest and Malicious Prosecution) for Violation of Article I, Sections 7 and 9 of the Connecticut Constitution

Assuming *arguendo* that the allegations about the Bloomfield PD's conduct towards Ms. Wilson are sufficiently egregious to give rise to a cause of action under *Binette*, the Court nonetheless finds no genuine dispute of material fact. The doctrines of qualified immunity and arguable probable cause have not been held to apply to violations of the Connecticut Constitution, *see supra* note 8, but even analyzing the claim under the ordinary probable cause standard, the facts discussed in the previous paragraph leave no genuine dispute as to whether

there was probable cause to arrest and prosecute Ms. Wilson for third-degree assault. The Court

therefore GRANTS summary judgment as to Count 4.

### F.      Count 5: Mr. Wilson against Officers Fox and Salvatore for Violation of the Fourth Amendment (Unreasonable Force)

The defendants argue that there is no genuine dispute of material fact as to whether

Officers Fox and Salvatore used reasonable force against Mr. Wilson. The Court disagrees and

therefore must deny summary judgment on this count.

"Determining whether a use of force was reasonable under the Fourth Amendment

requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth

Amendment interests against the countervailing governmental interests at stake. We ask whether

the officers' actions are objectively reasonable in light of the facts and circumstances confronting

them, without regard to their underlying intent or motivation. In doing so, we consider the

severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the

officers or others, and whether he is actively resisting arrest or attempting to evade arrest by

flight." *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014) (quotation marks and citations

omitted) (citing *Graham v. Connor,* 490 U.S. 386 (1989)). And because the officers have

asserted a defense of qualified immunity, Mr. Wilson's cause of action for excessive force will

succeed only if "it would [have been] clear to a reasonable officer that his conduct was unlawful"

under the circumstances. *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 761 (2d Cir.

2003).

The *Graham* factors are in dispute with regard to Mr. Wilson. The Court has already

determined that there is a genuine dispute of fact as to whether there was arguable probable

cause to believe that *any* crime had been committed by Mr. Wilson. And the parties dispute the

degree of Mr. Wilson's resistance. The defendants characterize him as uncooperative. The plaintiffs contend that he complied with the officers' orders within a reasonable time, exited the car with his hands up, and put up no resistance. And the parties also dispute the exact amount of force that was used against Mr. Wilson, including the length of time that he was held to the ground.

"Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004). Under the plaintiffs' version of the facts, a jury could reasonably conclude that Officers Fox's and Salvatore's conduct was objectively unreasonable, in that it would have been clear to a reasonable officer that the conduct was unlawful. The Court therefore DENIES summary judgment as to Count 5.

> **G.    Count 6: Mr. Wilson against Officers Fox and Salvatore**
> **for Violation of Article I, Sections 7 and 9 of the Connecticut Constitution**
> **(Unreasonable Force)**

For the reasons already set out with regard to Count 5, the Court finds that there is a genuine dispute of fact as to whether Officers Fox's and Salvatore's use of force against Mr. Wilson was reasonable, and therefore DENIES summary judgment as to Count 6.

> **H.    Count 7: Ms. Wilson against Officers Fox and Salvatore**
> **for Violation of the Fourth Amendment**
> **(Unreasonable Force)**

Applying the same legal standards set out under Count 5, the Court finds that the defendants are not entitled to summary judgment as to the reasonableness of the force used against Ms. Wilson. As with Mr. Wilson, both the amount of resistance on Ms. Wilson's part and the amount of force used by the officers are disputed. Under the version of the record most

favorable to Ms. Wilson, Officers Fox and Salvatore jumped on her back, kicked her, and pushed her face into the ground, even though she was unarmed, was already on her knees when they arrived, posed little threat to their safety, and put up no resistance to their arrest. While there is no dispute that Ms. Wilson had grabbed Marshal Kaz's testicles, a reasonable jury could still conclude that it would be clear to a reasonable officer that Officer Fox's and Salvatore's use of force against Ms. Wilson was excessive and unlawful under the circumstances. The Court therefore DENIES summary judgment as to Count 7.

### I.      Count 8: Ms. Wilson against Officers Fox and Salvatore for Violation of Article I, Sections 7 and 9 of the Connecticut Constitution (Unreasonable Force)

For the reasons already set out with regard to Count 7, the Court finds that there is a genuine dispute of fact as to whether Officer Fox's and Salvatore's use of force against Ms. Wilson was reasonable, and therefore DENIES summary judgment as to Count 8.

### J.      Count 9: Mr. Wilson and Ms. Wilson against Officers Fox and Salvatore for Willful, Reckless and/or Negligent Conduct and against the Town of Bloomfield for Negligent Conduct[9]

### i.      Negligent Conduct by Officers Fox and Salvatore and the Town

Absent the valid application of an exception, the doctrine of governmental immunity would bar the plaintiffs' recovery for any claims of negligence in this case, because the actions of the police officers at issue involved the exercise of discretion. *See Violano v. Fernandez*, 907 A.2d 1188, 1194 (Conn. 2006) ("Municipal officials are immunized from liability for negligence arising out of their discretionary acts . . . ."); *Williams v. City of New Haven*, 707 A.2d 1251, 1253 (Conn. 1998) ("[A] municipality is immune from liability for negligence unless the legislature has enacted a statute abrogating that immunity.").

---

[9]      Count 9 originally also included claims against the Town of Bloomfield for reckless or willful conduct, which the Court dismissed in an oral ruling on a motion for judgment on the pleadings. ECF No. 51.

"There are three exceptions to discretionary act immunity . . . . [L]iability may be imposed when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . ." *Violano*, 907 A.2d at 1194 (quotation marks omitted). Such circumstances would also expose municipalities to liability. *Doe v. Petersen*, 903 A.2d 191, 193 (Conn. 2006).

"[T]his test requires three things: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm." *Id*. at 616. The first factor is met when "the potential for harm [is] sufficiently immediate," and the second factor is met when "the harm occurs within a limited temporal and geographical zone, involving a temporary condition." *Cotto v. Bd. of Educ. of City of New Haven*, 984 A.2d 58, 64 (Conn. 2009). "The criteria of 'identifiable person' and 'imminent harm' must be evaluated with reference to each other. An allegedly identifiable person must be identifiable as a potential victim of a specific imminent harm. Likewise, the alleged imminent harm must be imminent in terms of its impact on a specific identifiable person." *Peterson*, 903 A.2d at 200.

As to the Wilsons, summary judgment on the basis of governmental immunity is precluded by the imminent harm exception, given that there is evidence that the Wilsons were the identifiable victims of physical injuries inflicted by Officers Fox and Salvatore themselves. *See, e.g.*, *Belanger v. City of Hartford*, 578 F. Supp. 2d 360, 367 (D. Conn. 2008); *Roguz v. Walsh*, No. 09-1052 TLM, 2012 WL 6049580, at *9 (D. Conn. Dec. 5, 2012). The Court therefore DENIES summary judgment on Count 9 against Officers Fox and Salvatore and the Town of Bloomfield, as to claims for negligent conduct.

### ii.    Willful/Reckless Conduct by Officers Fox and Salvatore

The defendants argue that Count 9's allegations of reckless or willful misconduct on the part of Officers Fox and Salvatore fail as a matter of law because the evidence demonstrates, at most, negligent conduct.

> The state of mind amounting to recklessness may be inferred from conduct. . . . [T]he terms wilful, wanton or reckless, in practice . . . have been treated as meaning the same thing. . . . [W]illful, wanton, or reckless conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent. It is at least clear that such aggravated negligence must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention.

*Craig v. Driscoll*, 813 A.2d 1003, 1022 (Conn. 2003) (internal citations omitted), *superseded by statute on other grounds*, Public Acts 2003, No. 03-91, *as recognized in O'Dell v. Kozee*, 53 A.3d 178, 197 (Conn. 2012). If it resolved all factual disputes as to the details of the incident in favor of the plaintiffs' testimony, a reasonable jury could conclude that Officers Fox's and Salvatore's conduct was reckless or willful, in that it was highly unreasonable, involving an extreme departure from ordinary care. The Court therefore DENIES summary judgment on Count 9 against Officers Fox and Salvatore as to claims for reckless or willful conduct.

### K.    Count 10: Ms. Jackson, Mr. Wilson, Ms. Wilson, Ashley Alridge, and Janae Alridge against Officers Fox and Salvatore for Intentional Infliction of Emotional Distress

The defendants contend that the plaintiffs fail to state a claim for intentional infliction of emotion distress against Officers Fox and Salvatore. A claim of intentional infliction of emotional distress requires showing: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was

27

severe." *Reyes v. City of Bridgeport*, 100 A.3d 50, 60 n.13 (Conn. App. 2014). The defendants

argue that Officers Fox and Salvatore's conduct was not extreme and outrageous.

Conduct is "extreme and outrageous" when it "exceeds all bounds usually tolerated by

decent society." *Id.* Summary judgment as to whether conduct was extreme and outrageous is

inappropriate where "reasonable minds could disagree about whether the Officers' actions were

sufficiently extreme and outrageous to support liability, and a reasonable juror could conclude

that they were." *DeRafelo v. Littlejohn*, No. 3:10-CV-207 CSH, 2012 WL 2459396, at *6 (D.

Conn. June 27, 2012). Reading the record in the light most favorable to the plaintiffs and in

comparison to precedents involving similar conduct by police offers in which Connecticut courts

denied summary judgment, this Court cannot say as a matter of law that Officers Fox's and

Salvatore's conduct was not extreme and outrageous. *See Balogh v. City of Shelton*, No.

CV990067521S, 2002 WL 523225, at *7 (Conn. Super. Ct. Mar. 18, 2002); *Hyde v. Pysz*, No.

CV054003674, 2006 WL 894926, at *5 (Conn. Super. Ct. Mar. 22, 2006). This remains a

disputed issue of fact for the jury, and the Court must therefore DENY summary judgment as to

Count 10.

> **L.     Count 11: Ms. Jackson, Mr. Wilson, Ms. Wilson, Ashley Alridge, and Janae**
> **Alridge against Officers Fox and Salvatore**
> **for Negligent Infliction of Emotional Distress**

The defendants argue that Ms. Jackson, Ashley Alridge, and Janae Alridge have

produced insufficient evidence to meet the elements of negligent infliction of emotional distress

under a theory of bystander emotional distress.

> [A] bystander may recover damages for emotional distress under the rule of
> reasonable foreseeability if the bystander satisfies the following conditions: (1) he
> or she is closely related to the injury victim, such as the parent or the sibling of
> the victim; (2) the emotional injury of the bystander is caused by the
> contemporaneous sensory perception of the event or conduct that causes the
> injury, or by arriving on the scene soon thereafter and before substantial change

has occurred in the victim's condition or location; (3) the injury of the victim must be substantial, resulting in his or her death or serious physical injury; and (4) the bystander's emotional injury must be serious, beyond that which would be anticipated in a disinterested witness and which is not the result of an abnormal response.

*Clohessy v. Bachelor*, 675 A.2d 852, 865 (Conn. 1996).

As to Ashley and Janae Alridge, the defendants argue that the plaintiffs cannot prove the second element of contemporaneous sensory perception, or perception "immediately after the injury causing event." *Id.* at 863. In Ashley Alridge's deposition, she testified that once Mr. Wilson, her uncle, was "taken to the ground" she was not "able to see any other interactions between [her] uncle and the police." Ashley Alridge Dep. at 45. She also testified that she could not discern which defendant had taken Ms. Wilson to the ground, and that she was "not able to see any further interactions between [her] Aunt Sharntae and whoever it was who had taken her down." *Id.* at 46-47. Similarly, Janae Alridge testified in her deposition that she had no "other recollection of interactions between [her] uncle and the police officers other than him being taken to the ground," Janae Alridge Dep. at 41, and did not "recall anything else about the interaction with [her] aunt other than her being brought to the ground," *id.* at 44.

The Court agrees that the plaintiffs have failed to produce any evidence that Ashley or Janae Alridge perceived the events that caused "serious physical injury" while they were happening or immediately thereafter. The plaintiffs argue that this Court should not interpret the second *Clohessy* criterion too narrowly, but they admit in their Local Rule 56(a) statement that Ashley and Janae Alridge remember only that the police forced the Wilsons to the ground. And they offer no evidence from which a reasonable jury could conclude that merely seeing their aunt and uncle forced to the ground made them witnesses to "serious physical injury." Summary judgment is therefore GRANTED as to Ashley and Janae Alridge's claims for negligent infliction of emotional distress.

29

As to Ms. Jackson, however, there remains a genuine dispute of material fact as to whether she has satisfied the elements of bystander emotional distress. She testified to having observed a great deal more than her daughters did, including seeing the police press their knees into her brother's (Mr. Wilson's) back for approximately a minute, while he screamed out in pain. Ms. Jackson Dep. at 138.

The defendants also challenge Ms. Jackson's claim under the fourth *Clohessy* criterion—that the bystander's emotional injury must be "serious"—but admit in their Local Rule 56(a) statement that Ms. Jackson was upset by what she saw and had trouble sleeping for months. Ms. Jackson also testified that she has become afraid of the police and has flashbacks of the incident when she sees police cars. Ms. Jackson Dep. at 80, 141. The defendants argue that Ms. Jackson's emotional injury is insufficiently serious, in that she did not suffer "neuroses, psychoses, chronic depression, phobia, shock or the like," quoting from *Clohessy* a list of "examples" of serious emotional distress. Aside from that list quoted from *Clohessy*—which is expressly "non-exhaustive" and is itself a quotation from a Louisiana Supreme Court decision included as part of a lengthy string citation—the defendants offer no authority for the proposition that Ms. Jackson's emotional injury is, as a matter of law, not "serious." Because a reasonable jury could conclude on the basis of Ms. Jackson's testimony that she has suffered an emotional injury "beyond that which would be anticipated in a disinterested witness and which is not the result of an abnormal response," *Clohessy*, 675 A.2d at 865, summary judgment is DENIED as to Ms. Jackson's claims for negligent infliction of emotional distress.[10]

---

[10] The Court rejected the defendants' governmental immunity argument with regard to the Wilsons' claims under Count 9, in light of the "imminent harm" exception to governmental immunity. The Court's reasoning as to Count 9 also applies to the Wilsons' and Ms. Jackson's claims under Count 11 for negligent infliction of emotional distress.

### M.   Count 12: Mr. Wilson and Ms. Wilson against Officers Fox and Salvatore for Assault and Battery[11]

The defendants argue that the Wilsons' claims under the common law of assault and battery fail as a matter of law because Conn. Gen. Stat. § 53a-22(b) permits peace officers to use reasonable force to effect an arrest or defend themselves and third persons.[12] Under an analogous New York statute with very similar language, "[i]n effect, the test for whether a plaintiff can maintain [state law assault and battery] cause[s] of action against law enforcement officials is the exact same test as the one used to analyze a Fourth Amendment excessive force claim." *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363 (S.D.N.Y. 2013).

Having already found a genuine dispute under Counts 5 and 7 as to the reasonableness of the force used by Officers Fox and Salvatore against Mr. and Ms. Wilson, the Court DENIES summary judgment as to the Wilsons' claim for assault and battery.

### N.   Count 14[13]: Ms. Jackson, Mr. Wilson, and Ms. Wilson against the Town of Bloomfield for Violation of the Fourth Amendment (Inadequate Policy and Custom)[14]

The plaintiffs seek damages against the Town of Bloomfield and allege under Count 14 that the Town had policies and customs that caused the violations of Ms. Jackson's and the Wilsons' constitutional rights. The defendants argue that the plaintiffs have not made a sufficient

---

[11]     Count 12 was originally brought by Ms. Jackson, Mr. Wilson, Ms. Wilson, and Janae Alridge, but the Court dismissed the claims by Ms. Jackson and Janae Alridge in an oral ruling on a motion for judgment on the pleadings. ECF No. 51.

[12]     That statute reads: "Except as provided in subsection (a) of this section, a peace officer, special policeman appointed under section 29-18b, motor vehicle inspector designated under section 14-8 and certified pursuant to section 7-294d or authorized official of the Department of Correction or the Board of Pardons and Paroles is justified in using physical force upon another person when and to the extent that he or she reasonably believes such to be necessary to: (1) Effect an arrest or prevent the escape from custody of a person whom he or she reasonably believes to have committed an offense, unless he or she knows that the arrest or custody is unauthorized; or (2) defend himself or herself or a third person from the use or imminent use of physical force while effecting or attempting to effect an arrest or while preventing or attempting to prevent an escape." Conn. Gen. Stat. Ann. § 53a-22.

[13]     Count 13 was dismissed in an oral ruling on a motion for judgment on the pleadings. ECF No. 51.

[14]     Count 14 originally also named Ms. Hard and Mr. Blatter, but the overarching issue of those defendants' individual liability on all the counts in the complaint has already been addressed, *supra* Section IV.A.

31

showing under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), and its progeny to enable them to seek damages from the Town. The Court agrees and therefore grants summary judgment on this claim.

First, the plaintiffs appear to have abandoned this claim. In their opposition to the motion for summary judgment, they make no attempt to rebut the defendants' challenge or to argue in favor of *Monell* liability. They also state at one point in their brief that they "will withdraw their cause of action . . . as to the Defendant Town of Bloomfield." Pl.'s Opp. at 26.

Even if the plaintiffs had not abandoned this claim, there would be no evidence in the record to support it. "[I]solated acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012). But "[a] municipal policymaking official's 'deliberate indifference' to the unconstitutional actions, or risk of unconstitutional actions, of municipal employees can in certain circumstances satisfy the test for a municipal custom, policy, or usage that is actionable under Section 1983." *Id.* "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action" and "that the official made a conscious choice." *Id.*

The complaint alleges deliberate indifference in connection with the Town's failure to train its police officers adequately, but the record does not support this theory of liability. "[A] municipality can be liable for failing to train its employees where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training," but plaintiffs must "identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d

113, 129 (2d Cir. 2004) (quotation marks omitted). The plaintiffs have introduced no evidence establishing specific deficiencies in the Town's training program or a causal relationship between a deficiency and the alleged constitutional violations.

The complaint also alleges deliberate indifference in connection with Ms. Hard and Mr. Blatter's failure to supervise and/or discipline Officers Fox and Salvatore.[15] To prevail on this theory of deliberate indifference, the plaintiffs "must show that the need for more or better supervision to protect against constitutional violations was *obvious*." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) (emphasis added). "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Id.* A need may also be "obvious" enough to permit an inference of deliberate indifference where a supervisory official fails to intervene after personally witnessing an instance of "blatantly unconstitutional" conduct. *Amnesty Am.*, 361 F.3d at 128.

There is no evidence that Ms. Hard, who had retired months earlier, had any awareness of the officers' conduct or the risk thereof, or had any ability to intervene. *See supra* Section IV.A. The only evidence related to Mr. Blatter's awareness or involvement shows that he met with the plaintiffs a few days *after* the May 29, 2010, incident to hear their complaint, and that during their conversation he attempted to justify the officers' conduct and told them that the department was looking into whether things could have been handled differently. Based on that limited evidence, the subsequent alleged malicious prosecution is the only constitutional injury that could have been caused by Mr. Blatter's failure to investigate or rectify the situation.

---

[15] For the purpose of this discussion, the Court assumes without deciding that Mr. Blatter, in his role as Acting Chief at the time, had policymaking authority.

Even assuming that the conversation with the plaintiffs alerted Mr. Blatter to the possibility that probable cause to prosecute Mr. Wilson was lacking, the record does not contain any evidence from which a fact-finder could conclude that he failed to prevent the prosecution because of his "deliberate indifference, rather than mere negligence or bureaucratic inaction." *Amnesty Am.*, 361 F.3d at 128. There is no direct evidence suggesting that Mr. Blatter made a conscious choice not to take remedial action, as the record is silent as to what he did after meeting with the plaintiffs and whether he approved or was even aware of the prosecution of the Wilsons. *See supra* Section IV.A. There is also no evidentiary basis to infer deliberate indifference from the presence of an "obvious" need for intervention. Mr. Blatter did not witness the events at Ms. Jackson's residence, and there is nothing in the record showing that he or the Bloomfield PD had received repeated complaints about constitutional violations by Officer Fox, Officer Salvatore, or any other members of the Bloomfield PD.

The plaintiffs have abandoned their *Monell* claim and, in any event, failed to provide evidence of deliberate indifference on the part of policymaking officials. There is therefore no basis to hold the Town liable for the alleged constitutional torts, and summary judgment must be GRANTED as to Count 14.

### O.   Count 16[16]: Against the Town of Bloomfield for Indemnifying Employees under Conn. Gen. Stat. § 7-465

The defendants argue that Count 16 fails as a matter of law, inasmuch as the Town of Bloomfield's liability under Conn. Gen. Stat. § 7-465 to indemnify its employees is entirely derivative of the plaintiffs' claims against the Bloomfield PD officers for negligent conduct, which themselves fail as a matter of law. But this argument fails, as the Court has determined

---

[16]   The complaint skips from Count 14 to Count 16.

that the plaintiffs' claims against the Bloomfield PD officers for negligent conduct do not fail as a matter of law. The Court therefore DENIES summary judgment as to Count 16.

> **P.** **Count 17: Against the Town of Bloomfield**
> **for Negligence of Employees under Conn. Gen. Stat. § 52-557n[17]**

Conn. Gen. Stat. § 52-557n functionally places the same liability on municipalities as Conn. Gen. Stat. § 7-465. *Grady v. Town of Somers*, 984 A.2d 684, 699 (Conn. 2009) ("[W]e previously have recognized that §§ 7–465 and 52–557n are coextensive . . . .") (quotation marks omitted). The difference is procedural and pertains to how the actions are pled and whether the municipal employees are themselves pursued as defendants. *See id.*; *Burton v. City of Stamford*, 971 A.2d 739, 750-51 (Conn. App. 2009). Plaintiffs may plead both, though it may be redundant to do so. *See, e.g.*, *Padula v. City of W. Haven*, No. CV075013408, 2008 WL 2745902, at *3 n.4 (Conn. Super. Ct. June 16, 2008); *Silver v. Town of W. Hartford*, No. CV98-0585357-S, 1999 WL 966468, at *7 (Conn. Super. Ct. Oct. 14, 1999). Thus, for the reasons already set out with regard to Count 16, the Court DENIES summary judgment as to Count 17.

> **V.** **Discussion of Marshal Kaz's Motion**

> **A.** **Sovereign Immunity and the Capacity in Which Marshal Kaz Is Sued**

Before separately considering all the counts against Marshal Kaz in the complaint, the Court will address Marshal Kaz's global argument that the plaintiffs' claims are barred by sovereign immunity because the claims are brought against him only in his official capacity as a state officer.

Under federal law, which governs Marshal Kaz's immunity defense to the plaintiffs' claims under Section 1983, "[s]uits against state officials in their official capacity . . . should be treated as suits against the State," *Hafer v. Melo*, 502 U.S. 21, 25 (1991), whereas "officers sued

---

[17] Count 17 originally also included claims against the Town of Bloomfield for reckless conduct, which the Court dismissed in an oral ruling on a motion for judgment on the pleadings. ECF No. 51.

in their personal capacity come to court as individuals," *id.* at 27. The Eleventh Amendment, which bars damages suits against the states in federal court, "does not erect a barrier against suits to impose individual and personal liability on state officials under § 1983." *Id.* at 30-31 (quotation marks omitted).

Notwithstanding a single sentence in the complaint alleging that Marshal Kaz "was acting in his official capacity in the performance of his duties . . . under color of state law," a full reading of the complaint leaves little doubt that the plaintiffs are suing Marshal Kaz personally/individually. Compl. ¶ 5. The summons attached to the complaint and the caption on the first page of the complaint both identify Marshal Kaz as a defendant in his official and individual capacities, and the prayer for relief seeks "[c]ompensatory or actual damages, jointly and severally, against all Defendants named in their individual capacity." *Id.* at 1, 34; *see also Shabazz v. Coughlin*, 852 F.2d 697, 700 (2d Cir. 1988) ("Notwithstanding the complaint's ambiguous language and the defendants' numerous affirmative defenses, Shabazz's request for punitive and compensatory damages, coupled with the defendants' summary judgment motion on qualified immunity but not Eleventh Amendment grounds, suggests that the parties believed that this action is a personal capacity suit.").

As for the claims brought under state law, "[i]f the plaintiff's complaint reasonably may be construed to bring claims against the defendants in their individual capacities, then sovereign immunity would not bar those claims." *Miller v. Egan*, 828 A.2d 549, 555 (Conn. 2003). The Connecticut Supreme Court has

> set forth four criteria to determine whether an action is in effect, one against the state and cannot be maintained without its consent: (1) a state official has been sued; (2) the suit concerns some matter in which that official represents the state; (3) the state is the real party against whom relief is sought; and (4) the judgment, though nominally against the official, will operate to control the activities of the state or subject it to liability.

*Id.* at 556 (quotation marks omitted).

The plaintiffs have not sought injunctive or declaratory relief, and they earlier voluntarily dismissed claims against the State Marshals Commission, the state agency that licenses and regulates state marshals. In addition, all of the plaintiffs' claims against Marshal Kaz allege reckless or willful conduct, or negligent conduct outside the scope of Marshal Kaz's employment, which would not expose the state itself to liability for damages under Conn. Gen. Stat. § 5-141d(a).[18] In short, neither the third nor the fourth criterion has been met as to those claims. *See Staton v. Cassavechia*, No. 3:08-CV-142 JCH, 2011 WL 3040911, at *3-4 (D. Conn. July 25, 2011). The plaintiffs may therefore proceed against Marshal Kaz in his personal/individual capacity.

---

[18]     That statute provides for indemnification of state officers: "The state shall save harmless and indemnify any state officer or employee, as defined in section 4-141, and any member of the Public Defender Services Commission from financial loss and expense arising out of any claim, demand, suit or judgment by reason of his alleged negligence or alleged deprivation of any person's civil rights or other act or omission resulting in damage or injury, if the officer, employee or member is found to have been acting in the discharge of his duties or within the scope of his employment and such act or omission is found not to have been wanton, reckless or malicious." Conn. Gen. Stat. § 5-141d(a).

The complaint is ambiguous as to whether the plaintiffs seek damages from the state for Marshal Kaz's negligent conduct, in that it contains the allegation that Marshal Kaz was acting within the scope of his employment. But the plaintiffs have eliminated any ambiguity by narrowing their claims through their briefing on the motion for summary judgment; they argue that Marshal Kaz is liable for his negligence only insofar as it was outside the scope of his employment, which relieves the state of any possible liability. Furthermore, it seems that this is the theory originally contemplated by the complaint. In order to have pursued relief from the state for Marshal Kaz's negligence, the plaintiffs would have needed to present the claims to the state claim commissioner under Conn. Gen. Stat. § 4-165, which the complaint fails altogether to address. This omission is made more meaningful by the fact that the complaint *does* expressly address the issue of damages and indemnification from the Town of Bloomfield under analogous statutory provisions relating to municipalities.

The Court also notes that the indemnification provision of Conn. Gen. Stat. § 5-141d(a) may not apply to Marshal Kaz at all, even if the plaintiffs were suing Marshal Kaz for negligent conduct within the scope of his employment, because state marshals are generally considered independent contractors, rather than state employees or officers. *Kim v. Emt*, 102 A.3d 137, 140 (Conn. App. 2014) ("State marshals are not, however, state employees . . . . Rather, state marshals are independent contractors . . . ."); Conn. Atty. Gen. Op. No. 2007-002, 2007 WL 852970, at *8 (Feb. 2, 2007) ("State marshals are not state officers or state employees within the meaning of Conn. Gen. Stat. § 4-165 and § 5-141d."); *but see Mason v. Barbieri*, No. CV085011263S, 2010 WL 1888711, at *3 (Conn. Super. Ct. Apr. 14, 2010). The Court expresses no opinion on this issue.

**B.      Count 18: Ms. Jackson and Janae Alridge against Marshal Kaz
for Violation of the Fourth Amendment
(Unreasonable Force)**

Marshal Kaz argues that there is no genuine dispute of material fact as to whether he used reasonable force against Ms. Jackson and Janae Alridge. Applying the legal standards already set out in the discussion of Counts 5-8, the Court disagrees and therefore must deny summary judgment on this count.

In his brief, Marshal Kaz himself acknowledges, "It is at the point where the Plaintiffs exited the house and Marhsal Kaz advised Mrs. Jackson that she stay and wait for the police that the parties' accounts of the facts diverge. . . . Marshal Kaz attests that he was attacked by the Plaintiffs and now sought to have them remain on the Premises so that the Bloomfield Police could investigate this assault in addition to assisting him with Kevin Jackson, while Plaintiffs claim that Marshal Kaz grabbed at Mrs. Jackson and Janae Alridge's wrists in his efforts to detain them . . . ." Marshal Kaz Br. (ECF No. 81), at 38.

Under the plaintiffs' disputed version of the facts, Marshal Kaz was an overzealous aggressor, who had been repeatedly told that the person upon whom he sought to serve capias warrants was not at Ms. Jackson's residence, who had little to no reason to suspect otherwise, and who used physical force—including direct bodily contact with Janae Alridge and Ms. Jackson that was strong enough, at least in the case of Ms. Jackson, to break a bracelet—to detain people who were not the subject of the capias warrant, had done nothing illegal, and were merely attempting to leave the residence together. A reasonable jury, viewing the plaintiffs' version of events in the light most favorable to them, might conclude that Marshal Kaz's conduct was objectively unreasonable, and further, that it would be clear to a reasonable officer that the conduct was unlawful. The Court therefore DENIES summary judgment as to Count 18.

### C.      Count 19: Ms. Jackson and Janae Alridge against Marshal Kaz
###          for Violation of Article I, Sections 7, 8, and 9 of the Connecticut Constitution
###          (Unreasonable Force)

For the reasons already set out with regard to Count 18, the Court finds that there is a

genuine dispute of fact as to whether Marshal Kaz's use of force against Ms. Jackson and Janae

Alridge was reasonable, and therefore DENIES summary judgment as to Count 19.

### D.      Count 20: Ms. Wilson against Marshal Kaz
###          for Violation of the Fourth Amendment
###          (Unreasonable Force)

Marshal Kaz argues that there is no genuine dispute of material fact as to whether he used

reasonable force against Ms. Wilson. Applying the legal standards already set out in the

discussion of Counts 5-8, the Court disagrees and therefore must deny summary judgment on

this count.

Marshal Kaz argues that his use of force against Ms. Wilson—grabbing her arms from

behind, kicking her feet out, and forcing her to the ground—was reasonable because he was a

peace officer authorized to use reasonable force to effect warrantless arrests. But this merely

begs the question of whether or not the force was reasonable under the circumstances. Although

the record could support the conclusion that Ms. Wilson was interfering with Officers Fox and

Salvatore's arrest of Mr. Wilson, a jury could reasonably credit the testimony that Ms. Wilson

merely stood in place and called out to Officers Fox and Salvatore from a distance of ten to

fifteen feet. Accepting the plaintiffs' version of events and viewing the record in the light most

favorable to them, a reasonable jury could conclude that Marshal Kaz's conduct towards Ms.

Wilson was objectively unreasonable, and further, that it would be clear to a reasonable officer

that the conduct was unlawful. The Court therefore DENIES summary judgment as to Count 20.

E.   **Count 21: Ms. Wilson against Marshal Kaz**
     **for Violation of Article I, Sections 7, 8, and 9 of the Connecticut Constitution**
     **(Unreasonable Force)**

For the reasons already set out with regard to Count 20, the Court finds that there is a

genuine dispute of fact as to whether Marshal Kaz's use of force against Ms. Wilson was

reasonable, and therefore DENIES summary judgment as to Count 21.

F.   **Count 22: Ms. Jackson, Mr. Wilson, Ms. Wilson, Ashley Alridge, and Janae**
     **Alridge against Marshal Kaz for Willful, Reckless and/or Negligent Conduct**

     i.   **Negligent Conduct by Marshal Kaz**

Marshal Kaz argues that any claims under Count 22 based on his negligence are barred

by the statutory immunity granted to state employees under Conn. Gen. Stat. § 4-165, which

provides: "No state officer or employee shall be personally liable for damage or injury, not

wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of

his or her employment."[19] "In other words, state employees may not be held personally liable for

their negligent actions performed within the scope of their employment. . . . State employees do

not, however, have statutory immunity for wanton, reckless or malicious actions, or for actions

not performed within the scope of their employment." *Miller v. Egan*, 828 A.2d 549, 561-62

(Conn. 2003).

"In order to determine if a state actor's conduct is caused in the discharge of his or her

duties or within the granted statutory authority, it is necessary to examine the nature of the

---

[19]   Although the plaintiffs have not challenged Marshal Kaz's reliance on Conn. Gen. Stat. § 4-165, the Court notes that there is reason to doubt that the statute applies to the personal/individual liability of state marshals, who are independent contractors. *See supra* note 18. Nonetheless, a similarly worded statute, Conn. Gen. Stat. § 6-38a(b) provides: "Any state marshal, shall, in the performance of execution or service of process functions, have the right of entry on private property and no such person shall be personally liable for damage or injury, not wanton, reckless or malicious, caused by the discharge of such functions." Case law interpreting Section 6-38a(b) is very limited, but at least one court has applied the provision in the same manner as Section 4-165. *Bonito Mfg., Inc. v. Criscuolo*, No. X10UWYCV106010297, 2014 WL 6462303, at *3 (Conn. Super. Ct. Oct. 20, 2014). Further, the plain text of Section 6-38a(b) suggests that this Court's analysis would reach the same result, inasmuch as Marshal Kaz's actions were taken in connection with an attempt to serve process.

alleged conduct and its relationship to the duties incidental to the employment." *Martin v. Brady*, 802 A.2d 814, 818 (Conn. 2002). The *Martin* court's analysis focused on the underlying purpose behind the officer's actions, rather than the means used to achieve that purpose. Even where there were allegations of significant misconduct, including excessive force, in the execution of an arrest warrant, the court held the officer's actions to be within the scope of his employment where they were part of "an attempt to effectuate th[e] arrest" and did not involve "improper and self-serving motives" or "misuse of governmental authority for personal gain." *Id.* at 818-19.

Although the plaintiffs have submitted sufficient evidence for a jury to conclude that Marshal Kaz acted negligently in executing the capias warrants, there is no dispute that serving the warrants was Marshal Kaz's underlying purpose for being at Ms. Jackson's residence that evening. There is no evidence from which a jury could reasonably conclude that Marshal Kaz's motivations were for personal gain or driven by "purely personal considerations entirely extraneous to his employer's interest." *Id.* at 818. The Court therefore GRANTS summary judgment on Count 22 as to claims for negligent conduct.

### ii.    Reckless/Willful Conduct by Marshal Kaz

Marshal Kaz argues that Count 22's allegations of reckless or willful misconduct on his part fail as a matter of law because there is no genuine dispute of fact as to whether his conduct was reckless or willful.

> The state of mind amounting to recklessness may be inferred from conduct. . . . [T]he terms wilful, wanton or reckless, in practice . . . have been treated as meaning the same thing. . . . [W]illful, wanton, or reckless conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent. It is at least clear that such aggravated negligence must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention.

*Craig v. Driscoll*, 813 A.2d 1003, 1022 (Conn. 2003) (internal citations omitted), *superseded by statute on other grounds*, Public Acts 2003, No. 03-91, *as recognized in O'Dell v. Kozee*, 53 A.3d 178, 197 (Conn. 2012). As already discussed with regard to Count 18, there are significant factual disputes about the reasonableness of Marshal Kaz's conduct, including the factual basis for his belief that the plaintiffs were lying and facilitating Mr. Jackson's avoidance of service of the warrant, the extent to which he restrained the plaintiffs' movements, and the details of the physical altercation outside Ms. Jackson's residence. A reasonable jury, accepting the plaintiffs' version of events fully and drawing all inferences in their favor, could conclude that Marshal Kaz's actions constituted highly unreasonable conduct, involving an extreme departure from ordinary care. Summary judgment is therefore DENIED on Count 22 as to claims of reckless or willful conduct.

### G.      Count 23: Ms. Jackson, Mr. Wilson, Ms. Wilson, Ashley Alridge, and Janae Alridge against Marshal Kaz for Intentional Infliction of Emotional Distress

Marshal Kaz argues that the plaintiffs' claim against him for intentional infliction of emotional distress fails as a matter of law because his conduct was not extreme and outrageous, and as to the claims by Ms. Jackson and her daughters, there is insufficient evidence of severe emotional distress because those three plaintiffs did not seek medical treatment for their emotional distress.

First, for substantially the same reasons set out with regard to Count 10, the Court finds that there is a genuine dispute of fact as to the extreme and outrageous nature of Marshal Kaz's conduct. Second, the fact that Ms. Jackson and her daughters did not seek medical treatment for their emotional distress does not preclude a finding that it was severe. *Birdsall v. City of Hartford*, 249 F. Supp. 2d 163, 175 (D. Conn. 2003) ("Just as the fact of treatment is not sufficient to prove the existence of severe emotional distress, the absence of treatment does not

preclude proof of severe emotional distress."). Those plaintiffs have testified under oath that they were upset, had trouble sleeping, and felt distrustful of police as a result of the incident at Ms. Jackson's residence, including Marshal Kaz's actions. Whether those claims rise to the level of severe emotional distress is a question for the jury. The Court therefore DENIES summary judgment as to Count 23.

### H. Count 24: Ms. Jackson, Mr. Wilson, Ms. Wilson, Ashley Alridge, and Janae Alridge against Marshal Kaz for Negligent Infliction of Emotional Distress

For the reasons already set out with regard to Count 22, the Court finds that the plaintiffs' claims based on Marshal Kaz's negligence, including negligent infliction of emotional distress, are barred by statutory immunity. *See, e.g.*, *Davila v. Messier*, No. 3:13-CV-81 SRU, 2014 WL 4638854, at *10 (D. Conn. Sept. 17, 2014). Summary judgment is therefore GRANTED as to Count 24.

### I. Count 25: Ms. Jackson, Mr. Wilson, Ms. Wilson, Ashley Alridge, and Janae Alridge against Marshal Kaz for Assault and Battery

Marshal Kaz argues that the assault and battery claims by Ms. Jackson, Ms. Wilson, and Janae Alridge fail as a matter of law because his physical contact with them was justified as the reasonable use of force under Conn. Gen. Stat. § 53a-22(b) and § 54-1f. Having already found a genuine dispute under Counts 18-21 as to the reasonableness of the force used by Marshal Kaz against Ms. Jackson, Ms. Wilson, and Janae Alridge, the Court DENIES summary judgment as to those plaintiffs' claim for assault and battery.

Marshal Kaz also argues that there is no evidence that he ever touched Mr. Wilson or Ashley Alridge, which precludes a claim for battery because battery requires that "a harmful contact with the person of the other directly or indirectly result[]." *Alteiri v. Colasso*, 362 A.2d 798, 801 n.3 (Conn. 1975). The Court agrees. But the Court also agrees with the plaintiffs that

the claim of assault survives because it requires no evidence that physical contact actually occurred. *Dewitt v. John Hancock Mut. Life Ins. Co.*, 501 A.2d 768, 770 (Conn. App. 1985) ("A civil assault is the intentional causing of imminent apprehension of harmful or offensive contact in another."). The Court therefore GRANTS summary judgment as to Mr. Wilson's and Ashley Alridge's claims for battery, but DENIES summary judgment as to their claims for assault.

### J.      Count 26: Ms. Jackson, Mr. Wilson, Ms. Wilson, Ashley Alridge, and Janae Alridge against Marshal Kaz for Unlawful Restraint

Marshal Kaz argues that the plaintiffs have failed to state a claim for unlawful restraint, also known as false imprisonment, because the plaintiffs were never actually confined; that is, even assuming that Marshal Kaz attempted to confine them, he failed to do so. "To prevail on a claim of false imprisonment, the plaintiff must prove that his physical liberty has been restrained by the defendant and that the restraint was against his will, that is, that he did not consent to the restraint or acquiesce in it willingly." *Berry v. Loiseau*, 614 A.2d 414, 432 (Conn. 1992). "Any period of such restraint, however brief in duration, is sufficient to constitute a basis for liability." *Id.* False imprisonment is an intentional tort, and therefore "[a] person is not liable for false imprisonment unless his act is done for the purpose of imposing a confinement, or with knowledge that such confinement will, to a substantial certainty, result from it." *Rivera v. Double A Transp., Inc.*, 727 A.2d 204, 209 (Conn. 1999).

The plaintiffs have produced testimony that *all* of them were blocked by Marshal Kaz as they tried to leave Ms. Jackson's residence, first at the door, then as they walked, and again after they got into the Wilsons' car, and that Marshal Kaz told them that they could not leave. The fact that the plaintiffs were ultimately able to make progress towards leaving does not preclude a finding that their physical liberty was restrained against their will at various points for some duration, however brief. There is also sufficient evidence for a jury to conclude that Marshal Kaz

acted with the intention to impose a confinement on the plaintiffs. Summary judgment is therefore DENIED as to Count 26.

**K.      Count 27: Ms. Jackson, Mr. Wilson, Ms. Wilson, Ashley Alridge, and Janae Alridge against Marshal Kaz for Negligent/Erroneous Service of Process under Conn. Gen. Stat. § 6-29**

For the reasons already set out with regard to Count 22, the Court finds that the plaintiffs' claims based on Marshal Kaz's negligence, including negligence in carrying out the duties imposed by Conn. Gen. Stat. § 6-29 *et seq.*, are barred by statutory immunity. Summary judgment is therefore GRANTED as to Count 27.

**L.      Count 28: Ms. Jackson, Mr. Wilson, Ms. Wilson, Ashley Alridge, and Janae Alridge against Marshal Kaz for "Unduly Execution" of Process under Conn. Gen. Stat. § 6-32**

Conn. Gen. Stat. § 6-32 makes a state marshal liable to "the party aggrieved" for failure to "duly and promptly execute and return" process or for making "false or illegal return thereof." The plaintiffs have not made any allegations, much less provided evidence, relating to the prompt and due execution of the capias warrant for Mr. Jackson or a false return thereof, or why the plaintiffs would be aggrieved by a violation of the statute. Summary judgment is therefore GRANTED as to Count 28.

**M.      Count 30[20]: Mr. Wilson and Ms. Wilson against the Bloomfield Defendants and Marshal Kaz for "Bystander Liability"**

The Court construes Count 30, a broad claim for "bystander liability," as merely an express invocation of a theory under which the Wilsons may recover for their emotional distress under Counts 10, 11, 23, and 24—that is, the bystander theory recognized in *Clohessy v. Bachelor*, 675 A.2d 852, 860 (Conn. 1996) ("Under certain circumstances, which are hereinafter delineated, we conclude that a tortfeasor may owe a legal duty to a bystander."). Having already

---

[20]     Count 29 was brought against the State Marshal Commission, a party that was voluntarily dismissed from the case on March 4, 2014. ECF No. 50.

addressed the defendants' arguments as to those counts, including arguments about bystander liability, the Court need not address Count 30 separately.

### VI.     Conclusion

As detailed above, the Bloomfield Defendants' Motion for Summary Judgment (ECF No. 79) is GRANTED IN PART AND DENIED IN PART. The case against the Bloomfield Defendants proceeds only as to:

o     Count 1, for claims by Mark Wilson against Michael Driscoll, John Fox, and James Salvatore in only their individual capacities for violation of the Fourth Amendment in the form of malicious prosecution, and John Fox and James Salvatore in only their individual capacities for violation of the Fourth Amendment in the form of false arrest;

o     Count 2, for the same claims as Count 1 brought under Article I, Sections 7 and 9 of the Connecticut Constitution;

o     Count 5, for claims by Mark Wilson against John Fox and James Salvatore in only their individual capacities for violation of the Fourth Amendment in the form of the use of unreasonable force;

o     Count 6, for the same claims as Count 5 brought under Article I, Sections 7 and 9 of the Connecticut Constitution;

o     Count 7, for claims by Sharntae Wilson against John Fox and James Salvatore in only their individual capacities for violation of the Fourth Amendment in the form of the use of unreasonable force;

o     Count 8, for the same claims as Count 5 brought under Article I, Sections 7 and 9 of the Connecticut Constitution;

o   Count 9, for claims by Mark Wilson and Sharntae Wilson against John Fox and James Salvatore in only their individual capacities for reckless or willful conduct, and against John Fox, James Salvatore, and the Town of Bloomfield for negligent conduct;

o   Count 10, for claims by Clara Ann Jackson, Mark Wilson, Sharntae Wilson, Ashley Alridge, and Janae Alridge against John Fox and James Salvatore in only their individual capacities for intentional infliction of emotional distress;

o   Count 11, for claims by Clara Ann Jackson, Mark Wilson, and Sharntae Wilson against John Fox and James Salvatore for negligent infliction of emotional distress;

o   Count 12, for claims by Mark Wilson and Sharntae Wilson against John Fox and James Salvatore in only their individual capacities for assault and battery;

o   Count 16, for claims against the Town of Bloomfield for indemnity of its employees' negligent conduct under Conn. Gen. Stat. § 7-465;

o   Count 17, for claims against the Town of Bloomfield for its employees' negligent conduct under Conn. Gen. Stat. § 52-557n.

As detailed above, Bruce Kaz's Motion for Summary Judgment (ECF No. 80) is GRANTED IN PART AND DENIED IN PART. The case against Bruce Kaz proceeds only as to:

o   Count 18, for claims by Clara Ann Jackson and Janae Alridge against Bruce Kaz in only his individual capacity for violation of the Fourth Amendment in the form of the use of unreasonable force;

o   Count 19, for the same claims as Count 18 brought under Article I, Sections 7 and 9 of the Connecticut Constitution;

o      Count 20, for claims by Sharntae Wilson against Bruce Kaz in only his individual capacity for violation of the Fourth Amendment in the form of the use of unreasonable force;

o      Count 21, for the same claims as Count 20 brought under Article I, Sections 7 and 9 of the Connecticut Constitution;

o      Count 22, for claims by Clara Ann Jackson, Mark Wilson, Sharntae Wilson, Ashley Alridge, and Janae Alridge against Bruce Kaz in only his individual capacity for reckless or willful conduct;

o      Count 23, for claims by Clara Ann Jackson, Mark Wilson, Sharntae Wilson, Ashley Alridge, and Janae Alridge against Bruce Kaz in only his individual capacity for intentional infliction of emotional distress;

o      Count 25, for claims by Clara Ann Jackson, Sharntae Wilson, and Janae Alridge against Bruce Kaz in only his individual capacity for assault and battery, and for claims by Mark Wilson and Ashley Alridge against Bruce Kaz in only his individual capacity for assault;

o      Count 26, for claims by Clara Ann Jackson, Mark Wilson, Sharntae Wilson, Ashley Alridge, and Janae Alridge against Bruce Kaz in only his individual capacity for unlawful restraint (false imprisonment).

**SO ORDERED** this 18th day of March, 2015, at Hartford, Connecticut.

                                                    /s/

                                              Michael P. Shea
                                              United States District Judge